IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

OSIRIS ENTERPRISES and          )
ANTONIO F. MOSCATIELLO,          )
                                 )
            Plaintiffs,          )
                                 )
                                 )
        vs.                      )     Civil Action No. 02-1103
                                 )
BOROUGH OF WHITEHALL, HAROLD     )
L. BERKOBEN, KATHLEEN N.         )
DePUY, PHILIP J. LAHR,           )
ROBERT J. McKOWN, GLENN P.       )
NAGY, ANDREW SAKMAR, ADAM        )
J. BARONE, JAMES F. NOWALK,      )
LINDA J. BOOK, JOHN A.           )
WOTUS, THOMAS OZEMO, JAMES       )
R. DUFFY, JAMES E. LEVENTRY      )
and MARILYN F. MOORE, in         )
their individual capacities,     )
                                 )
            Defendants.          )

MEMORANDUM

I

      Before the Court are the parties' cross-motions for summary
judgment pursuant to Fed.R.Civ.P. 56.  For the reasons set forth
below, plaintiffs' motion for summary judgment will be denied and
defendants' cross-motion for summary judgment will be granted.

II

      For purposes of the present motions, the undisputed facts,
as well as the procedural history of this case and related cases,
may be summarized as follows:

      On May 24, 2001, defendant Borough of Whitehall ("Borough")
issued a notice to bidders seeking proposals for the
reconstruction of storm sewers in the Oakridge Drive section of

the Borough ("the Oakridge Drive Project").  The notice provided

in pertinent part:

> "Proposals to receive consideration must be accompanied by
> an executed Non-Collusion Affidavit in the form provided by
> the Borough of Whitehall.  All bidders must be PennDOT pre-
> qualified and must submit their PennDOT Pre-Qualification
> Certificates and the non-collusion affidavit with their bid
> or the bid will be considered void."

In response to the notice to bid, Oakdale Construction

Corporation ("Oakdale Construction") submitted a bid in the

amount of $955,450, and plaintiff Osiris Enterprises ("Osiris"),

which is owned by plaintiff Antonio F. Moscatiello ("Antonio

Moscatiello"), submitted a bid in the amount of $978,760.  Two

other companies submitted bids that were in excess of $1,000,000.

Pursuant to the requirements of the notice to bid, Oakdale

Construction submitted a PennDOT Pre-Qualification Certificate

with its bid.  Although the certificate was expired,[1] Oakdale

Construction included a letter with its bid indicating that it

was in the process of updating its PennDOT Pre-Qualification

Certification.  Osiris had submitted a valid PennDOT Pre-

Qualification Certificate with its bid for the Oakridge Drive

Project.  Thus, Osiris was the lowest bidder that met all of the

requirements in the Borough's notice to bid.

During a public meeting on August 1, 2001, over the adamant

protests of plaintiffs, Borough Council extended the time limit

---

1. Oakdale Construction's PennDOT Pre-Qualification Certificate
had expired on January 23, 2000.

2

for submission of bids on the Oakridge Drive Project to enable the project to be awarded to Oakdale Construction.  During the August 1, 2001 meeting, Borough Council also voted unanimously to "debar" Osiris from bidding on future Borough construction projects due to Osiris's alleged status as a "non-responsible" bidder.  (Dfs' Appendix, Exh. C).  The declaration that Osiris was a non-responsible bidder purportedly was based on a dispute that had arisen in 1995 concerning Osiris's performance of a Borough construction project in 1993.  The dispute resulted in the Borough filing suit against Osiris.  The matter ultimately was settled with no determination of fault on the part of Osiris.

Shortly after the August 1, 2001 debarment of Osiris from bidding on future Borough construction projects, Franco Moscatiello, the father of Antonio F. Moscatiello, filed a complaint in equity against the Borough in the Court of Common Pleas of Allegheny County, Pennsylvania in his capacity as a Borough taxpayer, and the action was assigned docket number GD 01-15729 ("Case No. GD 01-15729").  In Case No. GD 01-15729, Franco Moscatiello sought (a) to enjoin the Borough from awarding the Oakridge Drive Project to Oakdale Construction and (b) to compel the Borough to award the project to Osiris.  (Dfs' Motion to Dismiss, Exh. A).

On September 26, 2001, following a hearing, the Honorable David S. Cercone (now a member of this Court) issued findings of

3

fact, conclusions of law and the following decree nisi in Case No. GD 01-15729:

### DECREE NISI

1.   The Borough of Whitehall is hereby enjoined from awarding the within contract to Oakdale Construction Corporation, based upon Oakdale Construction Corporation's failure to comply with a mandatory pre-requirement in order to submit a valid bid.

2.   The Borough is enjoined from considering Oakdale Construction Corporation's bid as that bid was void based upon Oakdale's failure to comply with a mandatory requirement of the notice to bid.

3.   The Borough of Whitehall is not enjoined from determining that Osiris Enterprises is not the lowest responsible bidder.

4.   The Borough of Whitehall did not abuse its discretion in determining that Osiris Enterprises was not the lowest responsible bidder.

5.   The Borough of Whitehall's determination that Osiris Enterprises was not the lowest responsible bidder was not arbitrary and capricious nor was it made in bad faith, and that determination may stand.

6.   Plaintiff has failed to meet its (sic) burden of showing that the Borough acted arbitrarily and capriciously.

(Dfs' Motion to Dismiss, Exh. B).

On June 20, 2002, plaintiffs filed this civil action against the Borough and the following individuals: Harold L. Berkoben ("Berkoben"), Kathleen N. DePuy ("DePuy"), Philip J. Lahr ("Lahr"), Robert J. McKown ("McKown"), Glenn P. Nagy ("Nagy"), Andrew Sakmar ("Sakmar"), Adam J. Barone ("Barone"), James F. Nowalk ("Nowalk"), Linda J. Book ("Book"), John A. Wotus ("Wotus"), Thomas Ozemo ("Ozemo"), James R. Duffy ("Duffy"),

Ruthann Omer ("Omer"), James E. Leventry ("Leventry"), Thomas
Hudzema ("Hudzema") and Marilyn F. Moore ("Moore").  Plaintiffs
asserted claims under Section 1983 of the Civil Rights Act of
1871 ("Section 1983"), 42 U.S.C. § 1983, and the Racketeer
Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.
§ 1961 *et seq.*, as well as claims under state law for violation
of various Pennsylvania statutes, breach of contract, false light
and surcharge.  Plaintiffs' claims in this case arise out of
Borough Council's August 1, 2001 declaration that Osiris was a
non-responsible bidder, which precluded Osiris from bidding on
future Borough construction projects, including the Oakridge
Drive Project which ultimately was awarded to Oakdale
Construction.[2]

Defendants moved to dismiss plaintiffs' complaint in this
case based on the doctrines of res judicata and collateral
estoppel and for failure to state a claim upon which relief may
be granted under Fed.R.Civ.P. 12(b)(6).  By memorandum and order
dated March 12, 2004, defendants' motion was granted in part and
denied in part.  With respect to defendants' res judicata/
collateral estoppel argument, which was based on the findings of
fact, conclusions of law and decree nisi issued by Judge Cercone
on September 26, 2001 in Case No. GD 01-15729, the Court

_____

2. A summary of the factual allegations in plaintiffs' complaint
in this case is attached hereto as Exhibit A.

concluded that Judge Cercone's findings of fact, conclusions of law and decree nisi did not constitute a final judgment on the merits because the grant or denial of a preliminary injunction is not a judgment on the merits.  Therefore, the doctrines of res judicata and collateral estoppel were inapplicable.  As to defendants' motion to dismiss plaintiffs' complaint under Fed.R.Civ.P. 12(b)(6), the Court (a) granted the motion with respect to plaintiffs' Section 1983 claim against the individual defendants in their official capacities; (b) granted the motion with respect to plaintiffs' Section 1983 claim against Omer and Hudzema based on insufficient allegations regarding their direction, actual knowledge and acquiescence in the challenged actions;[3] (c) granted the motion without prejudice with respect to plaintiffs' RICO claim; and (d) granted the motion with respect to plaintiffs' state law claims.  Thus, the only remaining claim in this case is plaintiffs' Section 1983 claim against the Borough and against Berkoben, DePuy, Lahr, McKown, Nagy, Sakmar, Barone, Nowalk, Book, Wotus, Ozemo, Duffy, Leventry and Moore in their individual capacities.[4]

_____

3. During the relevant time period, Omer and Hudzema were Borough Engineers.

4. With respect to plaintiffs' Section 1983 claim, the complaint alleged that defendants' actions "both substantively and procedurally deprive[d] plaintiffs of their property interests without due process of law." (Complaint, ¶ 123).  In the March 12, 2004 memorandum and order granting in part and denying in part defendants' motion to dismiss, the Court concluded that

On July 14, 2003 (after the complaint in this action was filed but prior to the disposition of defendants' motion to dismiss), plaintiffs filed an action against all of the defendants in this case in the Court of Common Pleas of Allegheny County, Pennsylvania, and the action was assigned docket number GD 03-12928 ("Case No. GD 03-12928").  In addition to the factual allegations set forth in the complaint filed in this case (regarding the declaration that Osiris was a non-responsible bidder for purposes of future Borough construction projects and the failure of Osiris to be awarded the Oakridge Drive Project), plaintiffs' complaint in Case No. GD 03-12928 included factual allegations regarding (a) three other Borough construction projects which were not awarded to Osiris as a result of the August 1, 2001 declaration that Osiris was a non-responsible bidder,[5] and (b) a complaint filed by Franco Moscatiello against

plaintiffs' claim under Section 1983 that defendants deprived them of property interests without procedural or substantive due process, which was based on defendants' alleged violation of Pennsylvania's competitive bidding laws, failed to state a claim upon which relief could be granted.  Nevertheless, relying on the decision of the United States Supreme Court in Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971), the Court concluded that defendants were not entitled to the dismissal of plaintiffs' Section 1983 claim in its entirety because plaintiffs sufficiently had alleged the deprivation of a liberty interest without due process of law, i.e., damage to their reputation in the community without notice and an opportunity to be heard. (Memorandum and Order, 3/12/04, pp. 18-22).

5. The first project, which was described as "The East Barlind Drive Project," was put out for bid in September, 2002, and, despite being the lowest bidder, Osiris was not awarded the

the Borough and A. Merante Contracting, Inc. in the Court of
Common Pleas of Allegheny County, Pennsylvania, which was
assigned docket number GD 03-005416 ("Case No. GD 03-005416").[6]
(Dfs' Appendix, Exh. A).  Plaintiffs' complaint against
defendants in Case No. GD 03-12928 asserted claims of
interference with contractual relations (Count I), interference
with prospective economic advantage (Count II) and defamation
(Count III).

On August 18, 2003, defendants filed preliminary objections
to plaintiffs' complaint in Case No. GD 03-12928, and, on October
1, 2003, the Honorable W. Terrence O'Brien entered an order which

---

contract.  (Dfs' Appendix, Exh. A, ¶¶ 98-120).  The second
project, which was described as "The Sanitary Sewer Repairs
Project," was put out for bid in January, 2003, and, again,
despite being the lowest bidder, Osiris was not awarded the
contract.  (Dfs' Appendix, Exh. A, ¶¶ 121-26).  The third
project, which was described as "The Radford Project," was put
out for bid in the fall of 2001, and Osiris's bid, which was
summarily rejected without being opened, was lower than the bid
of the contractor to whom the project was awarded.  (Dfs'
Appendix, Exh. A, ¶¶ 127-33).

6. The complaint in Case No. GD 03-12928 alleged that the action
filed by Franco Moscatiello and A. Merante Contracting, Inc.
against the Borough at Case No. GD 03-005416 related to the
Sanitary Sewer Repairs Project which had been put out for bid in
January, 2003; that the Honorable Timothy P. O'Reilly held a
hearing in the case in April, 2003; and that, following the
hearing, Judge O'Reilly enjoined the Borough from declaring
Osiris a non-responsible bidder based on the following findings:
(a) the Borough had debarred Osiris without an opportunity to be
heard and with no judicial review; (b) any investigation by the
Borough into Osiris's responsibility as a bidder was
"perfunctory;" and (c) the debarment of Osiris by the Borough was
"arbitrary and capricious" and enjoinable as an abuse of
discretion.  (Dfs' Appendix, Exh. A, ¶¶ 134-36).

(a) dismissed, with prejudice, the claims asserted by plaintiffs against the Borough, Leventry, Moore, Duffy, Omer, Hudzema and Nowalk;[7] (b) directed plaintiffs to file an amended complaint setting forth with more specificity the conduct of each remaining defendant; and (c) directed plaintiffs to combine their claims for interference with contractual relations and interference with prospective economic advantage into one count in the amended complaint.

On October 16, 2003, plaintiffs filed a motion for reconsideration of the order sustaining defendants' preliminary objections in Case No. GD 03-12928, based on the June 5, 2003 memorandum and order filed by Judge O'Reilly in Case No. GD 03-005416 in which Judge O'Reilly concluded that the Borough had acted arbitrarily and capriciously with respect to the debarment of Osiris and enjoined the debarment.  (*See* Footnote 6). Specifically, plaintiffs contended that Judge O'Brien's decision with respect to defendants' preliminary objections in Case No. GD 03-12928 directly contravened Judge O'Reilly's decision in Case No. GD 03-005416.  On October 30, 2003, Judge O'Brien denied plaintiffs' motion for reconsideration in Case No. GD 03-12928

---

7.  The individual defendants who were dismissed by Judge O'Brien's October 1, 2003 order held the following positions with the Borough: Leventry - Borough Manager; Moore - Borough Secretary; Duffy - Borough Solicitor; Omer - Borough Engineer; Hudzema - Borough Engineer; and Nowalk - Borough Mayor.  The remaining individual defendants were all members of Borough Council.

because the decision rendered by Judge O'Reilly on June 5, 2003 in Case No. GD 03-005416 did not deal with the issue of whether money damages were recoverable against any of the dismissed defendants in Case No. GD 03-12928, and, therefore, according to Judge O'Brien, his October 1, 2003 order was not inconsistent with Judge O'Reilly's June 5, 2003 decision in Case No. GD 03-005416.  (Dfs' Appendix, Exh. D).

Plaintiffs filed an amended complaint in Case No. GD 03-12928 on December 4, 2003; however, the amended complaint was stricken on December 8, 2003 for failure to comply with Judge O'Brien's October 1, 2003 order.  A second amended complaint was filed by plaintiffs in Case No. GD 03-12928 on December 29, 2003, and, on February 18, 2004, defendants filed preliminary objections to the second amended complaint.[8]  By order dated May 27, 2004, defendants' preliminary objections were sustained by Judge O'Brien and all counts against all remaining defendants were dismissed with prejudice.  (Dfs' Appendix, Exh. E).

On June 16, 2004, plaintiffs filed a notice of appeal to the Superior Court of Pennsylvania from Judge O'Brien's May 27, 2004 order in Case No. GD 03-12928 (Dfs' Appendix, Exh. D), and, on September 22, 2004, Judge O'Brien filed an opinion setting forth his reasons for sustaining defendants' preliminary objections to

---

8. The second amended complaint asserted claims against defendants for economic interference (Count I) and defamation (Count II).  (Dfs' Appendix, Exh. B).

10

plaintiffs' second amended complaint.  (Dfs' Appendix, Exh. F).

Specifically, Judge O'Brien concluded that the remaining

defendants in Case No. GD 03-12928 were entitled to high public

official immunity because the challenged action (the declaration

that Osiris was a non-responsible bidder during the August 1,

2001 meeting of Borough Council, precluding Osiris from bidding

on future Borough construction projects) occurred in the context

of a meeting that was open to the public and the action was taken

in connection with the award of a public works project.[9]  As to

_____

9. With regard to the doctrine of high public official immunity,
in Lindner v. Mollan, 544 Pa. 487, 677 A.2d 1194 (1996), the
Pennsylvania Supreme Court noted:

                    *    *    *

        More than forty years ago in Matson v. Margiotti, 371
    Pa. 188, 88 A.2d 892 (1952), this Court explained that the
    doctrine of absolute privilege for high public officials,

        as its name implies, is unlimited and exempts a high
        public official from all civil suits for damages
        arising out of false defamatory statements and even
        from statements or actions motivated by malice,
        provided the statements are made or the actions are
        taken in the course of the official's duties or powers
        and within the scope of his authority, or as it is
        sometimes expressed, within his jurisdiction.

    Matson, 371 Pa. at 194, 88 A.2d at 895.  The doctrine of
    absolute privilege "rests upon the idea that conduct which
    otherwise would be actionable is to escape liability because
    the defendant is acting in furtherance of some interest of
    social importance, which is entitled to protection even at
    the expense of uncompensated harm to the plaintiff's
    reputation.  Montgomery v. City of Philadelphia, 392 Pa.
    178, 181, 140 A.2d 100, 102 (1958)....

                    *    *    *

11

plaintiffs' collateral estoppel argument based on Judge

O'Reilly's June 5, 2003 decision in Case No. GD 03-005416, Judge

O'Brien stated in his opinion:

                    *    *    *

     Plaintiffs contend that due to Judge O'Reilly's
Memorandum and Order in *Moscatiello v. Whitehall, supra*,
defendants are collaterally estopped from denying Osiris'
debarment was arbitrary, capricious and an abuse of
discretion.  It is apparently plaintiffs' theory that Judge
O'Reilly's findings mean that defendants acted outside the
scope of their authority.

     The case before Judge O'Reilly was a taxpayer suit for a
preliminary injunction to enjoin Whitehall from awarding a
municipal contract to a higher bidder.[10]  Wrongful actions
are not necessarily outside the scope of an official's

_____

544 Pa. at 490-91, 677 A.2d at 1195.

10. In footnote 2 of his opinion dated September 21, 2004, Judge
O'Brien described Case No. GD 03-005416 as follows:

     2.  The case at GD 03-005416 was a taxpayer lawsuit by
     Franco Moscatiello, Antonio Moscatiello's father, against
     Whitehall Borough and A. Merante Contracting, Inc.  The
     elder Moscatiello sought a preliminary injunction to enjoin
     Whitehall from declaring Osiris Construction a non-
     responsible bidder and awarding a contract for underground
     sewer installation and renovation work to Merante.  He
     also sought a mandatory injunction to compel Whitehall to award
     the contract to Osiris, the low bidder on the project.
     Judge O'Reilly found that Osiris' debarment was arbitrary
     and capricious and not the result of a full investigation
     that warranted such an exercise of discretion.  A
     preliminary injunction was issued to enjoin Whitehall from
     declaring Osiris a non-responsible bidder and awarding the
     contract to Merante.  The Court found that it was beyond the
     scope of its authority to order Whitehall to award the
     contract to Osiris.  This result was affirmed by the
     Commonwealth Court in *Moscatiello v. Whitehall Borough*, 848
     A.2d 1071 (Pa.Cmwlth.2004).

(Dfs' Appendix, Exh. F, p. 3).

                              12

duties.  As noted in *Matson v. Margiotti, supra*, it does not matter if the statements or actions are motivated by malice, as long as they occur in the course of an official's duties or powers and within the scope of his authority, which was the case herein.

The doctrine of collateral estoppel provides that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.  An essential prerequisite to the operation of this doctrine is the entry of a valid and final judgment on the merits in the previous action.  The grant or denial of a preliminary injunction is not a judgment on the merits.  See *Exner v. Exner*, 268 Pa.Super. 253, 407 A.2d 1342 (1979).  The doctrine of collateral estoppel is, therefore, inapplicable.

*   *   *

(Dfs' Appendix, Exh. F, p. 15).

On June 23, 2005, the Commonwealth Court of Pennsylvania affirmed Judge O'Brien's May 27, 2004 order in Case No. GD 03-12928, holding that Judge O'Brien did not err in sustaining defendants' preliminary objections to plaintiffs' second amended complaint based on the doctrine of high public official immunity. (Dfs' Appendix, Exh. G).  On July 20, 2005, plaintiffs filed a petition for allowance of appeal from the June 23, 2005 judgment of the Commonwealth Court of Pennsylvania, which is currently pending.  (Pls' Brief in Opp., pp. 1-2).[11]

_____

11. By letter dated May 24, 2004, the Borough Manager notified Antonio Moscatiello that Osiris had been approved as a qualified bidder for construction projects in the Borough; that Osiris would be placed on the list of the Borough's approved bidders; and that, if it was necessary to remove Osiris from the Borough's list of approved bidders, Osiris would be notified and given an opportunity to respond to the reason for such removal.  (Dfs'

III

Under Rule 56(c) of the Federal Rules of Civil

Procedure, summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986).  The party moving for summary

judgment "always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of

a genuine issue of material fact." *Id.* at 323.  The moving party

can meet this burden by presenting evidence showing there is no

dispute of material fact, or by showing the district court that

the nonmoving party has failed to present evidence in support of

some element of its case on which it bears the ultimate burden of

proof. *Id.* at 322-324.  Once the moving party has met its

burden, Fed.R.Civ.P. 56(e) "requires the nonmoving party to go

beyond the pleadings and by [its] own affidavits, or by the

'depositions, answers to interrogatories, and admissions on

---

Appendix, Exh. 15 to Exh. K).  Thus, Borough Council's August 1,
2001 declaration that Osiris was debarred from bidding on Borough
construction projects is no longer in effect.

14

file,' designate 'specific facts showing that there is a genuine
issue for trial.'" *Id.* at 324.  After the nonmoving party has
responded to the motion for summary judgment, the court must
grant summary judgment if there is no genuine issue of material
fact and the moving party is entitled to judgment as a matter of
law." Fed.R.Civ.P. 56(c).

IV

A

With respect to plaintiffs' motion for summary judgment,
which is based on the doctrine of collateral estoppel, in <u>Ammon
v. McCloskey</u>, 440 Pa.Super. 251, 655 A.2d 549 (Pa.Super.1995),
the Superior Court of Pennsylvania discussed the doctrine as
follows:

*   *   *

> Collateral estoppel, sometimes referred to as issue
> preclusion, "operates to prevent a question of law or an
> issue of fact which has once been litigated and adjudicated
> finally in a court of competent jurisdiction from being
> relitigated in a subsequent suit." <u>Schultz v. Connelly</u>, 378
> Pa.Super. 98, 102 n.4, 548 A.2d 294, 296 n.4 (1988), *quoting*
> <u>Day v. Volkswagenwerk Aktiengesellschaft</u>, 318 Pa.Super. 225,
> 236, 464 A.2d 1313, 1318 (1983).  However, collateral
> estoppel is applicable only where: "(1) the issue decided in
> the prior action was identical with the one presented in the
> later action; (2) there was a final judgment on the merits;
> (3) the party against whom the plea is asserted was a party
> or in privity with a party to the prior adjudication; and
> (4) the party against whom the plea is asserted has had a
> full and fair opportunity to litigate the issue in question
> in a prior action." <u>Grant v. GAF Corp.</u>, 415 Pa.Super. 137,
> 149, 608 A.2d 1047, 1053 (1992), *aff'd*, <u>Gasperin v. GAF
> Corp.</u>, 536 Pa. 429, 639 A.2d 1170 (1994)....

*   *   *

15

440 Pa.Super. at 260-61, 655 A.2d at 553-54.

Plaintiffs argue that they are entitled to summary judgment on the issue of liability because defendants are collaterally estopped from re-litigating the issue of whether their August 1, 2001 decision to debar Osiris from bidding on future Borough construction projects was arbitrary and capricious based on the June 5, 2003 decision of Judge O'Reilly in Case No. GD 03-005416.[12]  (Pls' Motion for S.J., Exh. 2).  After consideration, the Court finds plaintiffs' argument unpersuasive.

First and foremost, as noted by defendants, the issue presented in this case, *i.e.*, whether the debarment of Osiris on August 1, 2001 violated Section 1983, is not identical to the issue decided by Judge O'Reilly in the taxpayer suit brought by Franco Moscatiello to enjoin the Borough from declaring Osiris a non-responsible bidder and awarding the Sanitary Sewers Repair Project to A. Merante Contracting, Inc.  In addition, as defendants further note, in Case No. GD 03-005416, defendants did not have a full and fair opportunity to litigate the defenses

---

12. As noted previously, in Case No. GD 03-005416, Franco Moscatiello sued the Borough and A. Merante Contracting, Inc., seeking injunctive relief.  On April 14, 2004, the Commonwealth Court of Pennsylvania affirmed Judge O'Reilly's June 5, 2003 decision in Case No. 03-005416, which enjoined the Borough from declaring Osiris a non-responsible bidder.  *See* 848 A.2d 1071 (Pa.Cmwlth.2004).  Thereafter, on October 27, 2004, Judge O'Reilly entered an order making the preliminary injunction entered in Case No. 03-005416 on June 25, 2003, a permanent injunction.  (Pls' Motion for S.J., Exh. 3).

they have raised to plaintiffs' Section 1983 claim.  Under the
circumstances, the Court concludes that the doctrine of
collateral estoppel does not entitle plaintiffs to a judgment in
their favor as a matter of law on the issue of liability.

B

Turning to defendants' cross-motion for summary judgment,
relying on the final judgment entered by Judge O'Brien on May 27,
2004 in Case No. GD 03-12928, defendants initially assert that
they are entitled to judgment in their favor as a matter of law
under the doctrine of res judicata, and, after consideration, the
Court agrees.[13]

Regarding the applicability of res judicata to plaintiffs'

---

13. In Witkowski v. Welch, 173 F.3d 192 (3d Cir.1999), the United
States Court of Appeals for the Third Circuit noted that the
doctrines of collateral estoppel and res judicata are often
confused, stating in relevant part:

FN 8. [Collateral estoppel] is often confused with res
judicata, which is now commonly referred to as claim
preclusion.  Claim preclusion "gives dispositive effect to a
prior judgment if the particular issue, albeit not litigated
in the prior action, could have been raised."  Bradley v.
Pittsburgh Bd. of Educ., 913 F.2d 1064, 1070 (3d
Cir.1990)(citations omitted).  Issue preclusion (collateral
estoppel), "bars relitigation only of an issue identical to
that adjudicated in the prior action."  Id.

173 F.3d at 199 n.8.

As noted by defendants in their reply brief, the arguments raised
by plaintiffs in opposition to defendants' cross-motion for
summary judgment reflect a misunderstanding of the doctrine of
res judicata.

17

Section 1983 claim in this case,[14] in <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451 (3d Cir.1996), the United States Court of Appeals for the Third Circuit stated:

                         *    *    *

Urrutia may be precluded from bringing his civil rights claim in federal court.  *See* <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 77 n.1, 104 S.Ct. 892, 894 n.1, 79 L.Ed.2d 56 (1984); <u>Allen v. McCurry</u>, 449 U.S. 90, 96-97, 101 S.Ct. 411, 415-16, 66 L.Ed.2d 308 (1980)(*res judicata* applies to § 1983 cases).  "When a prior case has been adjudicated in a state court, federal courts are required by 28 U.S.C. § 1738 to give full faith and credit to the state judgment and, in § 1983 cases, apply the same preclusion rules as would the courts of that state."  <u>Edmundson v. Borough of Kennett Square</u>, 4 F.3d 186, 189 (3d Cir.1993) (citations omitted).  Hence, in this case, Pennsylvania law determines if Urrutia's § 1983 claim should be barred.

Under Pennsylvania law, a final judgment on the merits by a court of competent jurisdiction will bar any identical future action between the parties and their privies.  *See, e.g.*, <u>Hopewell Estates, Inc. v. Kent</u>, 435 Pa.Super. 471, 476, 646 A.2d 1192, 1194 (1994).  All matters which might have been raised in the former suit as well as those that actually were raised are *res judicata* in a subsequent proceeding.  *Id.*  "In determining whether *res judicata* should apply, a court may consider whether the factual allegations of both actions are the same, whether the same evidence is necessary to prove each action and whether both actions seek compensation for the same damages."  <u>Hopewell Estates</u>, 435 Pa.Super. at 477, 646 A.2d at 1194-95 (citing <u>Mintz v. Carlton House Partners</u>, 407 Pa.Super. 464, 475, 595 A.2d 1240, 1246 (1991)).

                         *    *    *

---

14. The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to "give the same preclusive effect to a state-court judgment as another court of that State would give."  *See* <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, ___ U.S. ___, ___, 125 S.Ct. 1517, 1527 (2005), *citing*, <u>Parsons Steel, Inc. v. First Alabama Bank</u>, 474 U.S. 518, 523 (1986).

91 F.3d at 461.

Because the present case and Case No. GD 03-12928 involve the identical parties, arise out of the same factual allegations, and seek compensation for the same damages, and because *all* of the claims asserted in the present case (the remaining Section 1983 claim and the dismissed claims) could have been raised in Case No. GD 03-12928,[15] it is clear that plaintiffs' Section 1983 claim in the present case is barred by res judicata as a result of the final judgment entered by Judge O'Brien in Case No. GD 03-12928.  Moreover, as noted by defendants, the judgment entered by Judge O'Brien in Case No. GD 03-12928 is deemed final for purposes of res judicata unless or until it is reversed on appeal.  *See, e.g.*, <u>Shaffer v. Smith</u>, 543 Pa. 526, 530, 673 A.2d 872, 874 (Pa.1996).  Thus, plaintiffs' petition for allowance of appeal from the order of the Commonwealth Court of Pennsylvania affirming Judge O'Brien's May 27, 2004 order does not preclude the application of res judicata.  Finally, as noted by defendants, for purposes of res judicata, the effective date of a final judgment is the date of its rendition, without regard to the date of the commencement of the action in which it is rendered or the action in which it is to be given effect.  *See*

---

15. State courts possess concurrent jurisdiction with federal courts over Section 1983 actions.  *See* <u>Felder v. Casey</u>, 487 U.S. 131, 139 (1988).  Likewise, state courts possess concurrent jurisdiction with federal courts over civil RICO claims.  *See* <u>Tafflin v. Levitt</u>, 493 U.S. 455, 458 (1990).

19

Restatement (Second) of Judgments 2d, § 14.  Accordingly, the
fact that this case was filed before Case No. GD 03-12928 has no
relevance with respect to the applicability of res judicata.

Based on the foregoing, defendants' cross-motion for summary
judgment will be granted and judgment will be entered in favor of
defendants and against plaintiffs.[16]

An order follows.

                                        s/William L. Standish
                                      William L. Standish
                                 United States District Judge

_____

16. In light of the Court's conclusion that plaintiffs' Section
1983 claim is barred by the doctrine of res judicata, the Court
finds it unnecessary to address defendants' additional arguments
in support of summary judgment.

Exhibit A

Plaintiffs' complaint alleges the following facts:

Plaintiff Osiris Enterprises ("Osiris") is an entity organized to perform construction work in the Commonwealth of Pennsylvania.  Plaintiff Antonio F. Moscatiello ("Antonio Moscatiello") is the owner of Osiris.  (Complaint, ¶¶ 5-6).  The Borough of Whitehall ("Borough") is a Home Rule Community created and existing under the laws of the Commonwealth of Pennsylvania. At all relevant times, Harold L. Berkoben ("Berkoben"), Kathleen N. DePuy, Philip J. Lahr, Robert J. McKown, Glenn P. Nagy, Andrew Sakmar, Adam J. Barone, Linda J. Book, John A. Wotus and Thomas Ozemo were members of Borough Council, James F. Nowalk was the Mayor of the Borough, Marilyn F. Moore was the Borough's Secretary, James R. Duffy was the Borough's Solicitor, Ruthann Omer and Thomas Hudzema were Borough Engineers, and James E. Leventry was Borough Manager.  (Complaint, ¶¶ 7-24).

In 1993, Osiris performed construction work in the Borough for which it was paid in full ("the 1993 Construction Project"). Subsequently, in 1995, a dispute arose between the Borough and Osiris concerning warranty issues on the 1993 Construction Project.  Ultimately, a settlement agreement was negotiated resolving all issues in dispute.  Because the dispute was settled prior to a trial on the merits, Osiris never had the opportunity to present evidence in support of defenses that may have been raised to the Borough's claims in that dispute.  (Complaint, ¶¶ 26-28).

Between 1995 and 2001, Osiris bid on three Borough construction projects.  The bids were accepted with no comments or reservations; however, none of the projects were awarded to Osiris because it was not the lowest bidder on any of the projects.  (Complaint, ¶¶ 29, 48 and 72).  On May 24, 2001, the Borough issued a notice seeking bids on a storm sewer reconstruction project in the Oakridge Drive area of the Borough ("the Oakridge Drive Project").  The Borough's notice provided in relevant part:

> Proposals to receive consideration must be accompanied by an executed Non-Collusion Affidavit in the form provided by the Borough of Whitehall.  All bidders must be PennDOT pre-qualified and must submit their PennDOT Pre-Qualification Certificate and the Non-Collusion Affidavit with their bid or the bid will be considered void.

(Complaint, ¶¶ 30-31).

In response to the Borough's advertisement for bids for the

Oakridge Drive Project, Oakdale Construction Company ("Oakdale
Construction") submitted a bid of $955,450, Osiris submitted a
bid of $978,760, and two other companies submitted bids in excess
of $1 million.  Although Oakdale Construction's bid was the
lowest bid received by the Borough for the Oakridge Drive
Project, the bid was accompanied by a PennDOT Pre-Qualification
Certificate that had expired on January 23, 2000.  Thus, Oakdale
Construction did not meet the Borough's bid requirements,
rendering Osiris the lowest qualified bidder on the Oakridge
Drive Project.  (Complaint, ¶¶ 32-35).

     On August 1, 2001, at a public meeting of Borough Council,
defendants, over plaintiffs' adamant protests, extended the time
limit for submission of bids on the Oakridge Drive Project to
enable the project to be awarded to Oakdale Construction, which
was in the process of renewing its PennDOT Pre-Qualification
Certificate.  During the August 1, 2001 meeting, Borough Council,
after a vote, also debarred Osiris from bidding on future Borough
construction projects, declaring that Osiris was a non-
responsible bidder.  When Antonio Moscatiello requested a meeting
to discuss the debarment declaration, Berkoben advised him that
the issue was not open for discussion, and that Osiris would
never work in the Borough again.  (Complaint, ¶¶ 36, 41 and 55).


     With respect to debarring Osiris from bidding on future
Borough construction projects, although defendants claimed that
Osiris was a non-responsible bidder based on its performance of
the 1993 Construction Project which resulted in the 1995 dispute
between the Borough and Osiris, the 1995 dispute was not to be
considered a factor in future bidding on Borough construction
projects because the matter had been settled prior to being
litigated.  The true reason for Osiris's debarment on August 1,
2001 was retaliation for plaintiffs' challenge to the Borough's
actions in connection with Oakdale Construction's bid on the
Oakridge Drive Project.  (Complaint, ¶¶ 43 and 82).

     Plaintiffs adamantly protested Osiris's debarment,
contending that the Borough failed to follow the appropriate
procedures in taking such action: specifically, providing notice
to plaintiffs that the matter was going to be addressed at the
public meeting on August 1, 2001 and an opportunity to be heard
on the matter.  When challenged in court, Oakdale Construction's
bid on the Oakridge Drive Project was determined to be invalid
and defendants were prohibited from accepting Oakdale
Construction's bid.  The Borough re-advertised the Oakridge Drive
Project for bids on December 14, 2001, eliminating the
requirement of a PennDOT Pre-Qualification Certificate.  Thus,
Oakdale Construction became the lowest qualified bidder.  As a

result of its debarment, Osiris was precluded from re-bidding on the Oakridge Drive Project.  (Complaint, ¶¶ 42-43, 50, 70, 87).